# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

TIMOTHY TIMMONS,

    Plaintiff,

v.

OFFICER REID; and OFFICER SANDERS,

    Defendants.

CIVIL ACTION NO.: 6:16-cv-58

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Waycross, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain events while he was housed at Rogers State Prison in Reidsville, Georgia. (Doc. 1.) Defendants filed a Motion to Dismiss, (doc. 15), to which Plaintiff filed a Response, (doc. 20). Defendants filed a Reply, and Plaintiff filed a Surreply. (Docs. 21, 22.) For the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint for his failure to exhaust his administrative remedies. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND

Plaintiff filed this action on May 24, 2016, regarding events that occurred on May 6, 2015. (Doc. 1.) On that date, Defendants Reid and Sanders transferred Plaintiff to the Tattnall County Jail to be charged with assault on a corrections officer. (Id. at p. 6.) Plaintiff attempted to step into the transport van unassisted by the officers. However, the milk crate that he used as

a step to get into the van gave way, and Plaintiff fell backwards onto the ground on his left side. Plaintiff then asked Defendants Reid and Sanders to assist him as he was on the ground in "tears, agony, and in excruciating pain." (Id.) Plaintiff also asked Defendants to call an ambulance or take him to a hospital. However, Defendants refused to assist Plaintiff, ordered him to get into the transport van, and then "yanked [Plaintiff] up aggressively" and forced him into the van. (Id.)

Defendants Reid and Sanders then transferred Plaintiff to the Tattnall County Magistrate Court. Plaintiff states that he asked for medical attention throughout the trip to the courthouse, but Defendants told him to "shut up" and that he "wasn't getting any." (Id. at p. 7.) Plaintiff was required to walk to the hearing room and stand during the hearing, which caused him great pain. After the hearing in Tattnall County Magistrate Court, Defendants Reid and Sanders transferred Plaintiff back to Rogers State Prison. (Id.) Plaintiff states Defendants forced him to walk a long distance and up two flights of stairs while handcuffed, which caused him great pain. He states that, while he had to pass medical to get to his unit, Defendants Reid and Sanders refused to take him to the medical unit and that they laughed at and threatened him. (Id.) Plaintiff states that he later learned that he suffered a herniated disc, as well as pinched nerves, from the fall.

The Court directed service of Plaintiff's Complaint on Defendants by Order dated August 23, 2016. (Doc. 10.) Defendants then filed their Motion to Dismiss on November 7, 2016. (Doc. 15.)

**DISCUSSION**

In their Motion, Defendants assert Plaintiff failed to exhaust his available administrative remedies prior to the filing of his Complaint. In response, Plaintiff contends he exhausted his

administrative remedies as to the assertions he made in his Complaint, to the extent those remedies were made available to him.

As set forth below, I agree that Plaintiff failed to exhaust his administrative remedies prior to the filing of his Complaint, and Defendants' Motion is due to be granted on this basis.

## I. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts,

3

the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

## II. Exhaustion Requirements

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Additionally, the Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And

4

that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007)

(finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

**B.     The Georgia Department of Corrections' Grievance Procedure**

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 15-2, pp. 5–29.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 8.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 9.) Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. (Id. at p. 8.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 8 (emphasis in original).) A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 6.) The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. (Id. at p. 11.) A grievance "must" pertain to "a single issue/incident." (Id.) The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. (Id.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. (Id.) The Warden "should reject the grievance if it . . . [i]s not filed timely." (Id.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to deliver a decision to the inmate. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 14.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the

time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 15.) The Commissioner has 100 calendar days after receipt to render a decision. (Id. at p. 16.) These time limits may be waived for good cause. (Id. at pp. 11, 15.) Good cause is defined as a "legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal[,]" such as having a serious illness or being housed away from a facility covered by this SOP.[1] (Id. at p. 6.) "Where a [g]rievance is filed in reference to a different facility, the Grievance Coordinator at the offender's current facility will retain a copy of the [g]rievance and will forward the [o]riginal [g]rievance to the Grievance Coordinator at the named facility for processing." (Id. at p. 18.)

### C. Plaintiff's Efforts at Exhaustion

Defendants assert that, in order to properly grieve about the events underlying this cause of action, Plaintiff had to describe the misconduct he complains about and name each person responsible for the alleged misconduct. (Doc. 15-1, p. 6.) Defendants contend Plaintiff failed to file any grievances naming either of the Defendants or concerning their alleged behavior. Rather, Defendants assert Plaintiff claims he filed a grievance on May 5, 2015, and this grievance could not possibly concern the events giving rise to this cause of action, as those events allegedly occurred on May 6, 2015, a day later. Defendants also assert Plaintiff filed Grievance Number 208837 at Smith State Prison on November 16, 2015, which was rejected as being untimely and for containing more than one issue. Further, Defendants assert Plaintiff complained about events occurring on April 24, 2015, in that grievance. (Id. at p. 2.)

---

[1] Under the SOP, all grievances and related documents are to be retained for four (4) years after the final disposition of the grievance. (Doc. 15-2, p. 19.) The parties failed to submit any documentation relating to the grievances Plaintiff filed—save a printout of his grievance history and receipts from certain of Plaintiff's grievances. Nevertheless, the Court has enough information before it to analyze whether Plaintiff exhausted his available administrative remedies prior to the filing of his Complaint. Moreover, Plaintiff does not rebut Defendants' specific contentions regarding his lack of exhaustion. Rather, Plaintiff only speaks to whether he had any administrative remedies "available" to him.

8

Defendants state that, to the extent Plaintiff possibly filed a grievance regarding the events underlying his Complaint, that grievance was rejected as untimely. Thus, Defendants maintain Plaintiff did not properly exhaust his administrative remedies. (Id. at p. 6.)

In response, Plaintiff avers he attempted to turn in a grievance regarding the events of May 6, 2015, on May 7, 2015, but he was informed there was no counselor available and he could not give his grievance to an officer. (Doc. 20, p. 1.) Plaintiff maintains he was placed in the Tier II unit at Smith State Prison upon his transfer from Rogers State Prison on May 7, 2015, and was denied contact with anyone. Plaintiff also states, however, he asked the chief counselor if she would take his grievance. When she asked him what the grievance concerned, she informed him he could not file a grievance at one institution regarding events occurring at another institution. (Id.) Plaintiff contends this is the reason he did not file a timely grievance concerning the events giving rise to his Complaint. Additionally, Plaintiff alleges staff at Smith State Prison created inordinate delays in getting an appeal form to him before it was sent to Rogers State Prison, thus hindering his ability to fully exhaust his administrative remedies. (Id. at p. 5.)

Defendants counter that, by Plaintiff's own admission, he filed two grievances: 1) a grievance dated May 5, 2015, which could not have concerned events occurring on May 6, 2015; and 2) a grievance dated November 16, 2015, which was untimely. Thus, Defendants assert Plaintiff could not have exhausted his administrative remedies at the first <u>Turner</u> step. At the second <u>Turner</u> step, Defendants state Plaintiff's assertions cannot be accepted as true, because either Plaintiff spoke to a counselor who would not accept his grievances or he did not speak to a counselor or anyone else about filing a grievance upon his arrival at Smith State Prison. (Doc. 21, p. 3.) Defendants aver Plaintiff's exhibits show he attempted to exhaust his

administrative remedies relating to events that occurred on April 24, 2015, but he failed to provide any evidence that he attempted to file a grievance regarding the May 6, 2015, events. Specifically, Defendants note the grievance and appeal form Plaintiff attached to his Response state there was one (1) unaccounted for grievance—the one Plaintiff alleged was filed on May 5, 2015. Defendants reiterate that the May 5, 2015, grievance could not have pertained to the May 6, 2015, events, and neither the grievance nor the appeal Plaintiff filed mentions Defendants or the events of May 6, 2015. (Id. at p. 4.)

Plaintiff asserts he filed or attempted to file three (3) grievances: 1) a grievance dated May 5, 2015, concerning the events of April 24, 2015; 2) a grievance dated November 16, 2015, in which he stated he had not been seen by medical staff; and 3) a grievance dated January 21, 2016, which was an out-of-time grievance concerning the events of May 6, 2015, and which is not shown on his grievance history printout. (Doc. 22, pp. 1–2.) Plaintiff contends that, when the chief counselor told him he could not file a grievance at one institution concerning events occurring in another, he took her at her word and did not speak to anyone else about the matter. It was not until he was released from segregation, Plaintiff asserts, that he asked about the grievance he tried to file on May 5, 2015. Plaintiff contends he later asked another counselor whether he could file a grievance at one institution regarding another institution. When that counselor informed Plaintiff he could do so, he then filed a grievance on November 16, 2015. (Id. at p. 3.)[2]

---

[2] In his Complaint, Plaintiff contended he filed a grievance at Rogers State Prison on May 5, 2015, regarding events alleged to have occurred on April 24, 2015. Plaintiff asserted he filed another grievance at Smith State Prison on November 16, 2015, based on instructions from Ms. Johnson. (Doc. 1, p. 3.) Plaintiff also asserted he received a response to this grievance on January 21, 2016, and was informed his grievance was rejected as untimely and for having raised more than one issue. (Id. at p. 4.) Plaintiff contended he gave his appeal of that rejection to counselor Washington on January 25, 2016, which was given back to Plaintiff the next day because he did not attach a copy of the warden's response. On the other hand, Plaintiff admitted he did not appeal and that no adverse decision was rendered. (Id. at p. 5.)

At the first step of the Turner analysis, Plaintiff exhausted the administrative remedies available to him as to the events of May 6, 2015. According to Plaintiff, he was told at or soon after his arrival at Smith State Prison that he could not file a grievance at one institution concerning events which occurred at another institution. However, under the more exacting crucible of Turner's second step, Plaintiff's claim of exhaustion withers.

Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. Ross, ___ U.S. at ___ 136 S. Ct. at 1856–57 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. at ___, 136 S. Ct. at 1859 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007), and Turner, 541 F.3d at 1084). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id.

In his pleadings, Plaintiff maintains he attempted to exhaust his administrative remedies regarding the events underlying this cause of action but was told he could not give his grievance to an officer at Rogers State Prison before he was transferred to Smith State Prison. Plaintiff also maintains he was told at Smith State Prison that he could not file a grievance at one institution to complain about events occurring at another institution. (Doc. 20, p. 1.) However, by Plaintiff's own admissions and the parties' submissions to the Court, it is evident Plaintiff did not properly or fully exhaust his available administrative remedies pertaining to the events of May 6, 2015, prior to filing his Complaint. While the Court must accept Plaintiff's assertions regarding exhaustion as true at the first step of the Turner analysis, it is under no duty to do so at the second Turner step. Instead, the Court must resolve any factual dispute between the parties to determine whether Plaintiff exhausted his available administrative remedies.

In this regard, Defendants submitted the Affidavit of Lee Clark, the Deputy Warden of Care and Treatment and overseer of the grievance procedures at Smith State Prison. (Doc. 15-2.) Deputy Warden Clark declares every offender is given an oral explanation of the grievance procedures and a copy of the orientation handbook, which includes a copy of the grievance procedures, upon his or her entry into the Georgia Department of Corrections' system. (Id. at p. 2.) Deputy Warden Clark also declares Plaintiff filed four (4) grievances after he was transferred to Smith State Prison, but he failed to file a grievance concerning the events of May 6, 2015, involving the Defendants in this case. (Id. at pp. 3–4.)

The Court notes Plaintiff's contentions that he attempted to file a grievance regarding the events of May 6, 2015, and was told at Rogers State Prison he could not give his grievance to an officer and was told at Smith State Prison he could not file a grievance while at Smith State Prison regarding events which occurred at Rogers State Prison. Nevertheless, Plaintiff's

contentions are contradicted by his own assertions and by the evidence of record. Plaintiff maintains he was placed in segregation upon his arrival at Smith State Prison and was denied contact with anyone. In almost the same breath, however, Plaintiff asserts he was able to speak with Chief Counselor Cooke, who told him he could not file a grievance at one institution to grieve about conditions at another institution. (Doc. 20, p. 1.) Plaintiff offers his alleged inability to file his grievance at Smith State Prison concerning events occurring while he was housed at Rogers State Prison on May 6, 2015, as the reason he did not file a timely grievance as to these events. (Id.) However, Plaintiff also contends he asked another counselor whether it was true that he could not file a grievance at one institution regarding events at another institution upon his release from segregation. Upon learning this statement was not true, Plaintiff filed Grievance Number 208837 on November 16, 2015, which concerns claims of excessive force and the denial of medical care occurring on April 24, 2015, and which Plaintiff asserts he attempted to file on May 5, 2015. (Doc. 22, p. 3.) This grievance was rejected at the institutional level as being untimely and for raising more than one issue. Plaintiff appealed this rejection. (Doc. 15-2, pp. 3–4.)

The filing of Grievance Number 208837 cannot be considered to fulfill the exhaustion requirements as to the events of May 6, 2015, for several reasons. First and foremost, Grievance Number 208837 concerns events occurring on April 24, 2015, and Plaintiff admits these events are what he tried to file a grievance about on May 5, 2015. Plaintiff's purportedly failed attempt at filing a grievance on May 5, 2015, relates to events which occurred a day before the events giving rise to this cause of action. Secondly, Grievance Number 208837 was rejected as being untimely and for raising more than one issue, in contravention of the applicable SOP. Plaintiff's appeal of this rejection was denied. (Doc. 20-1, p. 2.) A rejection of a grievance for violation of

the applicable grievance procedure cannot be deemed "proper" exhaustion. Woodford, 548 U.S. at 95 (noting that a prisoner whose grievance is rejected as untimely or as otherwise failing to satisfy the applicable grievance procedures cannot have exhausted, as that would serve to thwart the administrative processes and render the PLRA's "exhaustion scheme wholly ineffective[]"). Further, if November 16, 2015, truly was Plaintiff's first opportunity to file a grievance regarding the May 6, 2015, events, he failed to do so and instead chose to file an out-of-time grievance concerning events alleged to have occurred on April 24, 2015.

Moreover, Plaintiff avers he attempted to file a grievance concerning the events of May 6, 2015, by filing an out-of-time grievance on January 25, 2016. Plaintiff states he filed three grievances: 1) on May 5, 2015, concerning the events of April 24, 2015; 2) on November 16, 2015, to complain about not being seen in medical; and 3) on January 21, 2016, to grieve about the events of May 6, 2015. (Doc. 22, p. 1.) As partial support for these averments, Plaintiff submitted a receipt for a grievance at the counselor's level dated January 25, 2016. (Doc. 20-1, p. 1.) However, Plaintiff also contends this grievance "mysteriously disappeared" and is not listed on his grievance history printout. (Doc. 20, p. 5.) Even accepting as true Plaintiff's assertion that he submitted a grievance to a counselor on January 25, 2016, concerning the events of May 6, 2015, any such grievance would have been rejected as being untimely filed under the applicable SOP. What is more, Plaintiff fails to explain why he waited more than two (2) months after he filed Grievance Number 208837 and more than eight (8) months after the events of May 6, 2015, to file a grievance concerning those events. Accordingly, this alleged submission cannot satisfy the exhaustion requirements. Even more telling is Plaintiff's own admission that he made no attempt to exhaust his administrative remedies as to the May 6, 2015, events until January 2016, at which time he claims he submitted a grievance.

Plaintiff does not present credible evidence that he is entitled to one of the exceptions to availability the Supreme Court espoused in Ross. Rather, the Court finds Defendants' account of the availability of remedies more credible and consistent than Plaintiff's account. Plaintiff ostensibly alleges staff at both Rogers and Smith State Prisons frustrated his efforts at exhaustion, but Plaintiff's own actions once any putative previously-unavailable remedies became available undermines his contentions in this regard. As noted above, Plaintiff chose not to file a grievance regarding the May 6, 2015, events at the first opportunity. Instead, Plaintiff's assertions in this regard reveal that he waited more than two (2) months' time to submit any such grievance, despite having filed Grievance Number 208837 on November 16, 2015, relating to events which pre-date the claims in this cause of action.[3] In addition, Plaintiff's accounts as to why he did not exhaust his administrative remedies are contradictory, and he sets forth nothing more that conclusory statements regarding prison staff's alleged efforts to hinder his attempts at exhaustion. Thus, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to Plaintiff's Complaint. Consequently, the Court should **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[4] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

---

[3] Neither Plaintiff nor Defendants assert Plaintiff attempted to have the time limits waived for "good cause", which would have been another remedy "available" to Plaintiff. (Doc. 15-2, pp. 6, 11, 15.)

[4] A certificate of appealability is not required in this Section 1983 action.

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA